IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA KASZUBA,<br><br>                Plaintiff,<br><br>    v.<br><br>PARTHASARATH GHOSH, *et al.*,<br><br>                Defendants. | Case No. 11 C 7631<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Joshua Kaszuba, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was allowed to proceed on his claim of deliberate indifference to a serious medical condition against Dr. Ghosh. This matter is before the Court for ruling on Defendant Parthasarath Ghosh's (hereinafter, "Defendant") Motion for Summary Judgment. For the reasons stated herein, the Motion is granted.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable

inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan*

*v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594-595 (7th Cir. 2007), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### A. Local Rule 56.1 (N.D. ILL.)

Defendant filed a Statement of Uncontested Material Facts pursuant to Local Rule 56.1 (N.D. Ill.). Defendant also provided Plaintiff a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those

facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are

entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also, Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a proper response to Defendant's statement of uncontested facts. Plaintiff filed a response to the Defendant's motion for summary judgment and his own additional statement of disputed facts but did not directly respond to Defendant's statement of uncontested facts. Accordingly, Defendant's statement of uncontested facts are deemed admitted.

However, because Plaintiff is proceeding *pro se*, the Court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials to the extent that he could properly testify about the matters asserted. *See*, FED. R. EVID. 602.

## II. **FACTS**

Plaintiff, presently an inmate at the Pontiac Correctional Center, was an inmate at the Stateville Correctional Center during the time period relevant to the instant matter. Def.'s 56.1(a)(3) Statement ¶ 1. Dr. Ghosh was a licensed physician and

served as the Medical Director of Stateville Correctional Center during the relevant time period  *Id.*, ¶ 2.

In or around July 2008, while an inmate at Stateville, Plaintiff noticed a mass in his neck.  Def.'s 56.1(a)(3) Statement ¶ 9.  Plaintiff thought "nothing of it" but he "put it in the sick call."  *Id.*  Plaintiff was seen by a medical provider other than Dr. Ghosh on September 16, 2008.  *Id.*, ¶ 10.  An ultrasound was ordered but it was not completed because Plaintiff was transferred to Menard Correctional in September 2008.  *Id.*

On September 16, 2009, Plaintiff was examined by Dr. Feinerman, who noted that the mass was soft, moveable, and approximately 3 cm by 2 cm.  Def.'s 56.1(a)(3) Statement ¶ 11.  Dr. Feinerman advised Plaintiff that the mass was "just fat," but Plaintiff was worried the mass was a tumor.  *Id.*  On March 18, 2008, when being seen by a nurse, Plaintiff requested further follow-up of his mass to rule out cancer.  *Id.*, ¶ 13.  The nurse documented that Plaintiff had no pain; however, Plaintiff testified at his deposition that this was false.  *Id.*, ¶ 14.  While at Menard, Plaintiff was also regularly seen by medical personnel for psychiatric issues.  *Id.*, ¶ 12.

On April 22, 2009, Plaintiff was transferred to Pontiac Correctional Center.  Def.'s 56.1(a)(3) Statement ¶ 15.  On May 4, 2009, it was noted in Plaintiff's medical records that the

mass was still approximately 2 cm by 3 cm. *Id.*, ¶ 16. It was also noted that the mass was not tender; but Plaintiff also testified that this was false. *Id.* Plaintiff believes that medical personnel at the prisons falsified his pain indications because they receive kickbacks for not referring prisoners to outside hospitals for medical care. *Id.*, ¶ 17. He claimed to know individuals with knowledge of this "big scam" but refused to disclose their identities. *Id.*

On June 1, 2009, Plaintiff underwent an ultrasound of the mass. Def.'s 56.1(a)(3) Statement ¶ 18. Subsequent to the ultrasound, Plaintiff was seen by a doctor at Pontiac who documented that Plaintiff had a soft, non-tender cystic lesion on the left side of his neck, which was thought to be a lipoma. *Id.*, ¶ 19. Plaintiff again disagreed that the mass was not tender but does recall that the doctor told him that the mass "isn't a problem." *Id.* A lipoma is a benign tumor composed of adipose (fatty) tissue. *Id.*, ¶ 20. Lipomas are soft to the touch, usually movable, and are generally painless. *Id.* Usually, treatment of a lipoma is not necessary unless the tumor is painful or restricts movement but they are usually removed for cosmetic reasons if they grow very large. *Id.*

Plaintiff was transferred back to Stateville sometime between October 24, 2009, and October 28, 2009. Def.'s

56.1(a)(3) Statement ¶ 21. Upon returning to Stateville, Plaintiff wrote sick call slips and made verbal requests to medical technicians and nurses to be seen for his lipoma. *Id.*, ¶ 23. On December 3, 2009, Plaintiff was seen by a medical professional, not Dr. Ghosh, where he was again assessed with a lipoma. *Id.*, ¶ 25. Plaintiff was offered pain medication, which he declined. *Id.* A follow-up exam was suggested in four weeks. *Id.*

On January 5, 2010, Plaintiff was again seen by a medical professional, other than Dr. Ghosh. Def.'s 56.1(a)(3) Statement ¶ 26. At this time, there was no change in his condition and he again declined pain medication. *Id.* On March 30, 2010, Plaintiff was seen in the chronic clinic for hypertension. *Id.*, ¶ 27. Plaintiff complained of a painful lipoma but refused medication. *Id.*

On April 28, 2010, Plaintiff was treated by Dr. Ghosh. Def.'s 56.1(a)(3) Statement ¶ 28. Plaintiff complained of having a mass in his neck. *Id.* Dr. Ghosh observed a soft mass in the left submandibular area of approximately 4.5 cm by 2.5 cm. *Id.* Dr. Ghosh referred Plaintiff for an outside consult with an ear, nose and throat physician ("ENT") at the University of Illinois Hospital ("UIC"). *Id.* The referral was approved on May 4, 2010, and an appointment was scheduled with Dr. Thambi at UIC for

June 10, 2010. (*Id.*, ¶ 29. Dr. Thambi assessed Plaintiff with a soft cystic mass in the left submandibular area, which he believed may be a lymphangioma. *Id.* Lymphangiomas are benign lesions of the lymphatic system that result in a soft, slow-growing doughy mass. *Id.* They are usually treated for cosmetic reasons only. *Id.* Dr. Thambi recommended a CT scan of the neck with contrast to better define the mass. *Id.* He also indicated that Plaintiff would most likely need surgical excision. *Id.* On June 11, 2010, Dr. Ghosh approved Dr. Thambi's recommendation and referred Plaintiff for a CT scan of the neck with and without contrast. *Id.*, ¶ 30. The referral was approved on June 22, 2010. *Id.*

On July 20, 2010, Plaintiff was admitted to the infirmary after complaining of back pain. Def.'s 56.1(a)(3) Statement ¶ 31. Dr. Ghosh examined Plaintiff on July 21, 2010, at which time he reported that his back was better and that he was pacing in his cell without difficulty. *Id.*, ¶ 32. Plaintiff did not complain about pain from the mass but it was noted that he needed a follow-up exam with the ENT after his pending CT scan was completed. *Id.* Plaintiff was then discharged from the infirmary. *Id.*

On July 23, 2010, Plaintiff received a CT scan at UIC. Def.'s 56.1(a)(3) Statement ¶ 33. Upon his return to Stateville

that same day, Plaintiff reported that he was in no distress and he was returned to his cell. *Id.* Plaintiff's CT scan was reviewed by a radiologist at UIC who issued a report indicating that the findings were compatible with a lipoma (rather than a lymphangioma) within the subcutaneous tissues inferior to the mandible and above the thyroid cartilage on the left measuring 2.0 cm by 5.6 cm by 4.1 cm. *Id.*, ¶ 34. Dr. Ghosh reviewed the CT report on July 27, 2010 *Id.*, ¶ 35. Based on the report, Dr. Ghosh assessed that Plaintiff had a small lipoma that was not presently bothering him and that did not require further evaluation at that time. *Id.*

On August 13, 2010, Plaintiff was interviewed by a psychologist and admitted to the infirmary for suicide watch. Def.'s 56.1(a)(3) Statement ¶ 36. Plaintiff was seen by a psychiatrist and provided medications. *Id.* Dr. Ghosh saw Plaintiff on August 13, 2010, in connection with his psychiatric admission to the infirmary. *Id.*, ¶ 37. At that time, Plaintiff made no complaints with respect to his lipoma, but its presence was noted. *Id.* Plaintiff was assessed with bipolar disorder and suicidal ideation. *Id.* The next day, he was found to no longer be suicidal and he was discharged from the infirmary. *Id.*, ¶ 38. Plaintiff did not make any complaints relating to his lipoma while at the infirmary. *Id.* On November 3, 2010, Plaintiff was

transferred from Stateville for medical treatment related to his psychiatric condition. *Id.*, ¶ 39. Plaintiff had no complaints relating to his lipoma at that time. *Id.*

On November 15, 2010, Plaintiff was seen in the hypertension/cardiac clinic at Stateville. Def.'s 56.1(a)(3) Statement ¶ 40. Plaintiff did not complain about his lipoma at that time. *Id.* On November, 23, 2010, Plaintiff was seen by a medical technician after he complained of chest pains. *Id.*, ¶ 41. Plaintiff did not complain about his lipoma at that time. *Id.* On January 15, 2011, Plaintiff was seen by a medical technician for complaints of pain on the left side of his neck. *Id.*, ¶ 42. Plaintiff was referred for a follow-up with a physician. *Id.*

On January 20, 2011, Plaintiff was seen by Dr. Ghosh. Def.'s 56.1(a)(3) Statement ¶ 43. Plaintiff complained of having pain in the left submandibular area with increased swelling. *Id.* Dr. Ghosh assessed Plaintiff as having cystic swelling of the submandibular area measuring 7 cm by 4.5 cm. *Id.* In light of these changes, Dr. Ghosh referred Plaintiff to be seen by an ENT physician at UIC for consideration of surgical excision of the lipoma. *Id.* Dr. Ghosh prescribed pain medication and put a medical hold on Plaintiff so that he would not be transferred to another facility. *Id.* Plaintiff was up for a transfer in

January 2011 because he was a "high escape inmate" and he asked for the medical hold so he could get the lipoma removed. *Id.*, ¶ 44. Dr. Ghosh's referral was approved on February 8, 2011. *Id.*, ¶ 45. However, on February 10, 2011, Plaintiff was again transferred from Stateville for inpatient treatment related to his psychiatric issues. *Id.*, ¶ 46.

On March 24, 2011, Plaintiff was seen by Dr. Brennan at UIC pursuant to Dr. Ghosh's referral. Def.'s 56.1(a)(3) Statement ¶ 47. Dr. Brennan assessed Plaintiff with a left submandibular lipoma that was recently enlarging and causing pain. *Id.* Dr. Brennan recommended surgical excision of the lipoma. *Id.* Based on Dr. Brennan's recommendation, Dr. Ghosh referred Plaintiff for surgical excision of the lipoma on March 25, 2011. *Id.*, ¶ 48. The referral was approved on March 30, 2011. Dr. Ghosh retired on March 31, 2011, and had no further contact with Plaintiff. *Id.*, ¶ 49. The lipoma was surgically removed from Plaintiff's neck on April 19, 2011. *Id.*, ¶ 50. Pathologic examination of the mass confirmed that it was a lipoma. *Id.*

Plaintiff claims that he filed grievances on November 15, 2009, and January 15, 2010, by placing the grievances in his prison bars. Plaintiff avers that he did not receive a response to either grievance, thus, he did not appeal either grievance. Def.'s 56.1(a)(3) Statement ¶ 4; Plaint.'s Amended Mem. In

Opposition. Plaintiff's master file does not include copies of any grievances filed by Plaintiff against Dr. Ghosh related to his lipoma but Plaintiff does provide a copy of each grievance in response. *Id.*, ¶ 8; Plaint.'s Amended Mem. In Opposition Ech. 1.

### III. **ANALYSIS**

#### A. Failure to Exhaust Administrative Remedies

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. *See, Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that the plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999).

A prisoner must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a prisoner's attempt to exhaust available administrative remedies in the midst of litigation is

insufficient. *See, Ford*, 362 F.3d at 398; *Perez*, 182 F.3d at 536-37.

To exhaust remedies under § 1997e(a), a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See, Porter*, 534 U.S. at 524-25.

However, a prisoner needs only exhaust the administrative remedies that are "available" to him. *See, Pave v. Coney*, 544 F.3d 739, 742 (7th Cir. 2008); *Dale v. Lapin*, 376 F.3d 652, 656 (7th Cir. 2004); *Pozo*, 286 F.3d at 1024-25. A prison employee who prevents a prisoner access to a remedy can render that remedy unavailable, and, under such circumstances, a failure to exhaust would not bar filing suit. *See, Pave*, 544 F.3d at 742; *Dale*, 376 F.3d at 656. Importantly, failure to exhaust administrative remedies is an affirmative defense; correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale*, 376 F.3d at 655.

While Plaintiff testified at his deposition that he believed he filed two grievances seeking medical care for his lipoma, he

conceded that he never filed an appeal as to either grievance. In his response to Defendant's motion for summary judgment, Plaintiff provides a copy of a November 15, 2009 and a January 15, 2010, grievance. Both grievances seek to receive medical treatment from Dr. Ghosh. Plaintiff argues that he never received a response to either grievance so he could not file an appeal. In light of the grievances provided by Plaintiff, a genuine issue of material fact exists as to whether Plaintiff exhausted the administrative remedies that were "available" to him in light of the question of whether he actually filed the grievances and, if they were filed, the lack of a response to the grievances by prison officials. Accordingly, summary judgment is denied based on Plaintiff's alleged failure to exhaust his administrative remedies.

**B. Deliberate Indifference to Medical Needs Claim**

Although a genuine issue of material facts exists as to whether Plaintiff has fully exhausted his administrative remedies, his deliberate indifference to his serious medical needs claims regarding the medical care he received for his lipoma from Dr. Ghosh fails.

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate

indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also, Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). For purposes of summary judgment, the court will assume that Plaintiff's medical condition was an objectively serious medical condition. However, Plaintiff has failed to demonstrate a genuine issue of material fact exists as to whether Dr. Ghosh was deliberately indifferent to Plaintiff's medical needs.

To establish a deliberate indifference claim, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The fact that a prisoner has received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544,

*1 (N.D. Ill. Jun. 17, 2011) (Kocoras, J.). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010), citing *Estelle*, 429 U.S. at 106. The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See, Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997).

Here, Dr. Ghosh treated Plaintiff for his lipoma starting in April of 2010, after Plaintiff was diagnosed with a possible lipoma in July of 2008. Dr. Ghosh monitored Plaintiff's medical condition and provided referrals for medical care by an ENT and the surgery that was eventually performed due to the lipoma enlarging and causing pain.

Plaintiff argues that Dr. Ghosh should have seen him sooner when he was at Stateville and that he failed to properly address the medical condition once he began treating him. It is unclear why Plaintiff believes that Dr. Ghosh should have been treating him sooner at Stateville. The undisputed facts demonstrate that Plaintiff was receiving medical care by medical staff and was not treated by Dr. Ghosh until April 2010. Plaintiff offers nothing to support his argument that Dr. Ghosh must have known about his serious medical condition. Plaintiff includes an affidavit from

a family member in which the family member avers that she contacted Stateville several times regarding Plaintiff's medical condition and his need for medical attention. However, while the affidavit indicates that she attempted to speak with Dr. Ghosh, she never did so, she spoke with other staff members. Thus, the affidavit does not demonstrate that Dr. Ghosh knew Plaintiff needed more immediate medical care for the lipoma. To the contrary, the undisputed facts show that Dr. Ghosh treated Plaintiff on several occasions for other medical issues and that Plaintiff did not complain about any issues or pain regarding the lipoma.

Furthermore, the undisputed facts demonstrate that once Dr. Ghosh did become involved in Plaintiff's medical care he monitored Plaintiff's medical condition, provided referrals for medical care by an ENT and for the surgery that was eventually performed. Plaintiff takes issue with Dr. Ghosh waiting to have the surgery performed until March 2011, when Dr. Thambi indicated surgery in June 2010. However, Dr. Thambi did not indicate that surgery was required in his report; instead, he indicated that Plaintiff would most likely need surgical excision at some point. The report did not indicate when any surgery may be required. Thus, Dr. Ghosh did not simply ignore Dr. Thambi's diagnosis or report. Based on these undisputed facts and the totality of care provided by Dr. Ghosh, as fully set forth above, no rational

trier of fact could find for that Dr. Ghosh was deliberately indifferent to Plaintiff's medical condition.

### IV. CONCLUSION

For the reasons stated herein, Defendant' Parthasarath Ghosh's Motion for Summary Judgment [ECF No. 50] is granted. The Clerk is directed to enter judgment in favor of Defendant Parthasarath Ghosh pursuant to FED. R. CIV. P. 56.

**IT IS SO ORDERED.**

						Harry D. Leinenweber, Judge
						United States District Court

Date: July 24, 2013